IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| VS. | § | NO. 4:19-CR-283-A |
| | § | |
| BRODERICK WALKER | § | |

MEMORANDUM OPINION
and
ORDER

The court previously, by order signed February 3, 2020, informed the parties of the court's tentative conclusion that it should reject the plea agreement between defendant, BRODERICK WALKER, and the government. The court continues to have that tentative conclusion, even more firmly now than on February 3, 2020, but, in addition, has developed tentative conclusions that defendant's waiver of indictment and agreement to proceed on the basis of the information filed by the United States Attorney and defendant's plea of guilty to the information should each be set aside. Before defendant waived the return of an indictment and agreed to proceed on the basis of the information filed by the United States Attorney, the court misinformed the defendant of the sentence of imprisonment to which he was subjecting himself, and, again, before defendant entered his plea of guilty to the information, the court misinformed the defendant of the maximum term of imprisonment he could receive by reason of such a plea.

Near the beginning of the proceeding during which defendant waived his right to insist on an indictment by a grand jury and agreed to proceed on the basis of the information filed by the United States Attorney and then pleaded guilty to the information (hereinafter "arraignment hearing"), the court informed the defendant, <u>inter alia</u>, that the penalties he was subjecting himself to included a term of imprisonment of five years.[1] Doc. 24 at 8.[2] After that, the court determined that defendant waived his right to have an indictment returned by a grand jury as to the offense charged by the information filed by the United States Attorney. <u>Id.</u> at 23, 25; Doc. 13.

Again, as the plea agreement was being read aloud by the attorney for the government, the court interrupted once the penalty section was read, which stated that defendant was exposing himself to a term of imprisonment "not to exceed 5 years,"[3] to make sure that the defendant understood that he was subjecting himself to all those penalties if he were to plead

---

[1] The court was misled into telling defendant that his maximum penalty of imprisonment would be 5 years by the recitation Walker, his attorney, and the responsible Assistant United States Attorney put in the factual resume under the heading "Maximum Penalty" that one of the "maximum penalties the Court can impose for Count One" included "imprisonment for a period not to exceed 5 years." Doc. 15 at 1, ¶ a.
[2] The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:19-CR-283-A.
[3] Again, the court was misled by the recitation in the plea agreement, signed by defendant, his attorney, and an Assistant United States Attorney, that said that one of the maximum penalties the court could impose was "imprisonment for a period not to exceed 5 years." Doc. 14 at 2, ¶ 3.a.

2

guilty to the offense charged by the information. Doc. 24 at 28.

Upon a thorough review of pertinent legal authorities and the allegations of the information to which defendant pleaded guilty, the court has concluded that defendant was subjecting himself to a term of imprisonment of 20 years by reason of his plea of guilty to the offense charged by the information.

As contemplated by Rule 7(c)(1) of the Federal Rules of Criminal Procedure, the information to which defendant pleaded guilty was a one-count information that defined the offense as "Conspiracy to Commit Money Laundering" and specified as the statutes that defendant was alleged to have violated by stating in the heading of Count One "Violation of 18 U.S.C. § 371 and 1956(a)(1)(B)(i)." Doc. 7. The wording of Count One was as follows:

> Beginning on or about July 2014, and continuing until on or about April 2015, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, Broderick Walker, did knowingly combine, conspire, confederate, and agree with others known and unknown to the United States to commit certain offenses against the United States, that is, to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce involving the proceeds of a specified unlawful activity, that is, theft of public funds, in violation of 18 U.S.C. § 641, knowing that the property involved represented the proceeds of some form of unlawful activity, and with the intent to conceal and disguise the nature, source, or ownership of the proceeds of

specified unlawful activity, in violation of
18 U.S.C. § 1956(a)(1)(B)(i).

Doc. 7 at 1, ¶ 1.

The purpose of the conspiracy was defined in paragraph 2 of the information, which was worded as follows:

> The purpose of the conspiracy was for Walker, his co-conspirators, and others to engage in financial transactions affecting interstate commerce to conceal and disguise the source of unauthorized and fraudulent payments of Individual Income Tax Refunds, to which they knew they were not entitled, in an effort to personally enrich Walker and his co-conspirators.

Id. at 2, ¶ 2.

That was followed by a section titled "Manner and Means of the Conspiracy," worded as follows:

> 3. The manner and means by which Walker and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Northern District of Texas and elsewhere:
>
> 4. During this period, Walker and his co-conspirators established multiple bank accounts at financial institutions, sometimes under the names of aliases or nonexistent business entities, with the purpose of receiving tax refunds.
>
> 5. During this period, Walker and his co-conspirators obtained the names, dates of birth, social security numbers, and other personal identifying information of hundreds of deceased individuals.
>
> 6. Walker and his co-conspirators electronically filed with the Internal Revenue

4

Service ("IRS") false and fraudulent federal income
tax returns using the names and social security
numbers of deceased individuals. The income tax
returns included false financial information and
directed the IRS to deposit the refunds into the bank
accounts controlled by **Walker** and his co-conspirators.

    7. From July 2014 through April 2015, at least
forty-one illegally-obtained refunds totaling
$27,457.07 were deposited into these bank accounts, to
which **Walker** and co-conspirators were not entitled.

    8. After the tax refunds had been electronically
deposited by the U.S. Treasury into the bank accounts
controlled by defendant and/or co-conspirators, **Walker**
or co-conspirator would then withdraw the funds in
cash for the use and benefit of the conspiracy.

Id. at 2-3, ¶¶ 3-8.

Those allegations were followed by a series of paragraphs under the heading "Overt Acts," which, for all practical purposes, alleged in paragraphs 9, 10, and 11 additional conduct on the part of defendant and his co-offenders that were in violation of the money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i). The final paragraph of the information alleged the following:

    In furtherance of the scheme, through at least
April 14, 2015, in the Northern District of Texas, the
defendant **Walker** and/or other co-conspirators
continued to prepare and electronically file false and
fraudulent Individual Income Tax Return, Form 1040,
for multiple individuals without their knowledge and
consent, intending for the subsequent refund to be
electronically deposited into a bank account under the
control of defendant or a co-conspirator.

Id. at 5, ¶ 12.

5

At the arraignment hearing, the court established that defendant had a clear understanding of the offense to which he was pleading guilty. Doc. 24 at 2-4. The defendant said he understood the things the government would have to prove to cause him to be convicted of the offense charged by the information. Id. at 4-7.

The court has now concluded that the court erred by informing defendant twice that he was subjecting himself to a term of imprisonment of only 5 years if he were to plead guilty to the offense charged by the information. Rather, the court has now concluded that defendant probably has subjected himself to service of a term of imprisonment of 20 years by his plea of guilty to the information.

Applicability, *vel non*, of 18 U.S.C. § 1956(h)

Section 1956(h) of Title 18, United States Code, reads as follows:

> (h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

18 U.S.C. § 1956(h).

The offense charged by the information to which defendant pleaded guilty could not be a better fit to the language of § 1956(h). The title of Count One is an exact fit—"Conspiracy

6

to Commit Money Laundering." Doc. 7 at 1. Paragraphs 1 and 2 of the information describe in detail the money laundering offense and the money laundering statute that were violated, id. at 1-2, ¶¶ 1 & 2, and give the precise citation of the section of 1956 that was the object of the conspiracy. For defendant to be held liable for the offense charged by the information, defendant either would have to plead guilty to the offense or a jury would have to find that he conspired with another or others to engage in the unlawful money laundering activity described in the first two paragraphs of the information.

Defendant acknowledged at the very beginning of his arraignment hearing that he understood that the information charged him with "the offense of conspiracy to commit money laundering." Doc. 24 at 3-5. Shortly thereafter, he was advised of the elements of the offense to which he proposed to plead guilty, and he said he understood that those were the things the government would have to prove to a jury beyond a reasonable doubt to cause him to be convicted of the offense charged by the information. Id. at 4-7. Those elements included all the elements of a common law conspiracy as well as all elements of an 18 U.S.C. § 1956(a)(1)(B)(i) offense.

The stipulated facts in the factual resume defendant, his attorney, and counsel for the government signed in anticipation

7

of defendant's plea of guilty could not have made it any clearer that the offense to which defendant was pleading guilty matched the language of § 1956(h). Doc. 15 at 2-5. Defendant said he read carefully and understood everything said under the heading "Stipulated Facts" in the factual resume. Doc. 24 at 37-38.

The court's only pause in placing full reliance on § 1956(h) are things the Supreme Court said in its 2005 decision in <u>Whitfield v. United States</u>, 543 U.S. 209 (2005).

The question presented to the Supreme Court for decision in <u>Whitfield</u> was whether a "conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), requires proof of an overt act in furtherance of the conspiracy." 543 U.S. at 211. The court held that it does not. <u>Id.</u> at 211 & 219. If that was the only thing that the Supreme Court said in <u>Whitfield</u> pertinent to the instant action, there would not be a problem. The Court said nothing in the <u>Whitfield</u> opinion to suggest that the inclusion of overt acts in a charging document would disqualify the charging document from properly asserting a violation of § 1956(h). If § 1956(h) is found to be applicable, defendant is subject to a 20-year prison sentence. 18 U.S.C. § 1956(a)(1).

However, the Supreme Court added to its opinion language that raised a question as to whether 18 U.S.C. § 371 could

8

provide the conspiracy aspect required by § 1956(h). The Supreme Court expressed the conclusion that § 1956(h) established a separate offense. Id. at 215. And, in response to the reading by petitioners in Whitfield that § 371 supplied the conspiracy element of § 1956(h), the Supreme Court said "[b]ut the text of § 1956(h) fails to provide any cross-reference to § 371" and that "[m]ere use of the word 'conspires' surely is not enough to establish the necessary link between these two separate statutes" and added that "[i]n short, if Congress had intended to create the scheme petitioners envision, it would have done so in clearer terms." Id. On this same subject, the Court had the following to say:

> Petitioners also point out that, when Congress enacted § 1956(h), it did so under the title "Penalty for Money Laundering Conspiracies," 106 Stat., at 4066 (emphasis added). Had Congress wanted to enact an "offense" provision, they argue, it would have titled it accordingly.
>
> Because the meaning of § 1956(h)'s text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history. But even were we to do so, we would reach the same conclusion. It is undisputed that Congress intended § 1956(h) to increase the penalties for money laundering conspiracies. The provision's text makes clear that Congress did so precisely by establishing a new offense. Given the clarity of the text, mere silence in the legislative history cannot justify reading an overt-act requirement, or a cross-reference to § 371, into § 1956(h). See, e.g., United States v. Wells, 519 U.S. 482, 496-497 (1997)(refusing to read a materiality element into the statute at issue based on

9

silence in the legislative history); Harrison v. PPG
Industries, Inc., 446 U.S. 578, 592 (1980)("[I]t would
be a strange canon of statutory construction that
would require Congress to state in committee reports
or elsewhere in its deliberations that which is
obvious on the face of a statute"). Nor do we find it
significant that Congress chose to label § 1956(h) a
"penalty" rather than an "offense" provision. See
Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S.
206, 212 (1998)("'[T]he title of a statute . . .
cannot limit the plain meaning of the text'");
Castillo v. United States, 530 U.S. 120, 125
(2000)(although "[t]he title of the entirety of § 924
is 'Penalties' . . . at least some portion of § 924 .
. . creates, not penalty enhancements, but entirely
new crimes").

Id. at 215-216.

While giving the Whitfield opinion full respect, the court suggests that the Whitfield holding does not prevent this court from reaching the conclusion that, under the unique facts of this case, the provisions of § 1956(h) apply to this action to cause defendant to be "subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy," that is, 20 years. See 18 U.S.C. § 1956(a)(1). In fact, Whitfield encourages that conclusion.

This court concludes that the Supreme Court's explanations in Whitfield that suggest that § 371 cannot supply the conspiracy component of § 1956(h) must mean that the Supreme Court takes the position that a statute that merely says that a person will not conspire to commit an offense is sufficient to

10

invoke the common law elements of a conspiracy without a cross-reference to, or reliance on, a general conspiracy statute, such as § 371. From that, it would seem to follow that the wording of § 1956(h) is sufficient to define the conspiracy element of the offense; and, that the broad language of the information that defendant "did knowingly combine, conspire, confederate, and agree with others known and unknown to the United States to commit certain offenses against the United States," doc. 7 at 1, ¶ 1, satisfies the common law meaning of a conspiracy. The fact that § 371 is mentioned in the title and at the end of the information does not mean that the language in the information cannot satisfy the common law meaning of a conspiracy. The mention of § 371 in the information does not negate the plain language of paragraph 1 of the information that defendant conspired with someone to do things that were in violation of 18 U.S.C. § 1956(a)(1)(B)(i). That should be all that would be required to cause the conspiracy feature as well as the object of the conspiracy (a violation of § 1956(a)(1)) feature of § 1956(h) to be satisfied. When the information is read in the context of the Whitfield opinion, the references in the information to § 371 become surplusage that this court can disregard. See Fed. R. Crim. P. 8(d).

Taking at face value the suggestion in Whitfield that § 371 cannot supply the conspiracy component of § 1956(h), the conclusion that necessarily follows is that the Supreme Court concluded in Whitfield that the common law meaning of a conspiracy was what Congress had in mind when it enacted § 1956(h). One of the cases cited by the Court in Whitfield in support of its reasoning was Nash v. United States, 229 U.S. 373 (1913). Whitfield, 543 U.S. at 213, 214, 216. In Nash, the Supreme Court provided the following explanation as to why an overt act was not required for a common law statement of a conspiracy:

> Coming next to the objection that no overt act is laid, the answer is that the Sherman Act punishes the conspiracies at which it is aimed on the common law footing--that is to say, it does not make the doing of any act other than the act of conspiring a condition of liability.

Nash, 229 U.S. at 378.

Another earlier opinion cited by the Court in Whitfield was Singer v. United States, 323 U.S. 338 (1945). Whitfield, 543 U.S. at 213, 214, 216. In Singer, the Supreme Court, citing Nash as authority, gave the following explanation for its reason for not requiring an overt act for the offense of conspiracy, as that term was used in the litigation under review in Singer:

> The section does not require an overt act for the offense of conspiracy. It punishes

12

> conspiracy "on the common law footing." Nash v. United States, 229 U.S. 373, 378. Hence the indictment is sufficient if the words "or conspire to do so" extend to all conspiracies to commit offenses against the Act.

Singer, 323 U.S. at 340. Another case the Supreme Court cited with approval in Whitfield is United States v. Shabani, 513 U.S. 10 (1994). Whitfield, 543 U.S. at 212, 213, 214, 215, 216. In Shabani, the Court, citing Nash and Singer, made reference to the "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." Shabani, 513 U.S. at 13.

To use the common law meaning of the word "conspiracy," as it is used in § 1956(h), is consistent with what the Supreme Court referred to as a "cardinal rule of statutory construction," which it described in Molzof v. United States, as follows:

> A cardinal rule of statutory construction holds that:
>
> "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as

a departure from them." Morissette v. United States, 342 U.S. 246, 263 (1952).

Molzof, 502 U.S. 301, 307 (1992).

This court suggests that the charge made against defendant by the information to which he pleaded guilty precisely falls within the scope of § 1956(h) when the word "conspires" is given its common law meaning, thus causing defendant to be subject to a maximum term of imprisonment of 20 years. Inasmuch as defendant was not correctly informed of that sentencing exposure either in reference to his decision to waive the return of an indictment and to proceed on the basis of the information or his decision to plead guilty to the offense charged by the information, the court considers that it has no choice not only to reject defendant's plea agreement for the reasons set forth in the order the court issued in the instant case on February 3, 2020, but to set aside defendant's waiver of indictment and plea of guilty, bearing in mind the requirement of Rule 7(b) of the Federal Rules of Criminal Procedure (that a person "may be prosecuted by information if the defendant . . . after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment") and the requirement of Rule 11(b)(1)(H) of the Federal Rules of Criminal Procedure (that before the court accepts a plea of guilty, the court must

inform the defendant of "any maximum possible penalty, including imprisonment").

The Penalty Provision of § 1956(a)(1) Is Applicable In Any Event

The court has concluded that a 20-year term of imprisonment is a penalty that could be imposed on defendant for his commission of the offense alleged in the information even if § 1956(h) were found to be inapplicable.

The heading of Count One explaining that the offense was "Conspiracy to Commit Money Laundering (Violation of 18 U.S.C. § 371 and 1956(a)(1)(B)(i))" and the definition of the nature of the offense, as set forth in paragraphs 1 and 2 of the information, make quite clear that the offense being charged includes a violation of 18 U.S.C. § 1956(a)(1)(B)(i). Doc. 7 at 1-2. That would be true even if there had been no reference in the information to 18 U.S.C. § 371 or to a conspiracy. At the arraignment hearing, defendant expressed an understanding of what the government would have to prove in order to cause him to be convicted of the money laundering feature of the charge against him in the information, and he acknowledged that all of those facts existed in this case. Doc. 24 at 5-7. Somewhat pertinent at this point is the conclusion reached by the Second Circuit in United States v. Thorn, 317 F.3d 107 (2d Cir.

2003). The Court made the following observation, without reference to § 1956(h):

> Thorn was convicted of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (h). The statutory maximum term of imprisonment for this offense is twenty years. 18 U.S.C. § 1956(a)(1).

Thorn, 317 F.3d at 124.

Defendant's admission that he did those things, and his plea of guilty to those things, that are alleged in the information that constitute a violation of § 1956(a)(1)(B)(i), cause him to be subject to the 20-year term of imprisonment penalty prescribed by § 1956(a)(1).

The Court's Tentative Conclusion Is That It Should Set Aside Defendant's Waiver of the Return of an Indictment and Agreement to Proceed on the Basis of the Information and His Plea of Guilty to the Information

The court obviously did not comply with the requirement of Rule 7(b) that "[a]n offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment." Fed. R. Crim. P. 7(b). Not only was defendant not advised of his rights, he was misled into thinking that the maximum sentence of imprisonment he could received if he waived the return of an indictment and proceeded on the basis of the

16

information was 5 years. A similar problem exists in reference to his plea of guilty to the information. Rule 11(b)(1)(H) requires that before the court accepts a plea of guilty, the court must inform the defendant of, and determine that the defendant understands, "any maximum possible penalty, including imprisonment. . . ." Fed. R. Crim. P. 11(b)(1)(H). The court misled defendant before he entered his plea of guilty to the information that the maximum term of imprisonment to which he would be subjecting himself was 5 years. Thus, the appearance is that the waiver of indictment and plea of guilty both should be set aside. However, before making a final decision on those subjects, the court is affording the parties an opportunity to comment on the court's conclusions and reasoning as expressed in this order and to provide any arguments and authorities either party might have suggesting that the court's tentative conclusions are incorrect.

ORDER

Therefore,

The court invites each party by 4:00 p.m. on March 12, 2020, to file a document providing to the court any disagreement the party has with any of the conclusions expressed, or reasoning contained, in this order that have led to the court's tentative conclusions that defendant's waiver of indictment and

plea of guilty to the information should be set aside, which document shall also include whatever authorities support the basis for any such disagreement.

The court ORDERS that the sentencing hearing of defendant currently set to be conducted at 10:30 a.m. on March 5, 2020, be, and is hereby, cancelled, to be reset once the court has resolved the issues raised in this order relative to the validity of the waiver of indictment and plea of guilty.

SIGNED February 28, 2020.

/s/ John McBryde
JOHN McBRYDE
United States District Judge